**MEL, INC., a Washington general partnership, Plaintiff,**

v.

**GOTAAS–LARSEN SHIPPING, CORPORATION, a Liberian corporation; Gotaas–Larsen Incorporated, a Liberian corporation; and John M. Seabrook, Defendants.**

No. 89–0602–CIV.

United States District Court,
S.D. Florida.

Oct. 27, 1993.

Alan H. Fein, Stearns, Weaver, Miller, Weissler, Alhadeff & Sitterson, P.A., Miami, FL, for plaintiff.

Lewis F. Murphy, Steel, Hector & Davis, Miami, FL, Vaughn C. Williams, Theresa A. Szeliga, Skadden, Arps, Slate, Meagher & Flom, New York City, John Chesney, Drinker, Biddle & Reath, Philadelphia, PA, for defendants.

*ORDER DENYING PLAINTIFF'S (MEL, INC.) EMERGENCY MOTION FOR PRELIMINARY INJUNCTION*

ARONOVITZ, District Judge.

Plaintiff MEL, Inc., has submitted to this Court Plaintiff's Emergency Motion for Preliminary Injunction, file dated September 30, 1993, as to which this Court has held an evidentiary hearing, received and reviewed several memorandum briefs from all parties, heard oral argument by counsel for all parties, and being otherwise fully advised in the premises, it is thereupon

ORDERED AND ADJUDGED that Plaintiff's Emergency Motion for Preliminary Injunction be, and the same is, hereby DENIED.

In this securities action, plaintiff MEL alleges that the Defendants' failure to disclose certain material facts induced it to sell its shares of a cruise line company, Admiral Holdings, Inc., for less than its value. By Order dated July 17, 1990, this Court ruled that it has subject matter jurisdiction over the action and personal jurisdiction over the Defendants. More importantly, this Court held that the Amended Complaint sufficiently stated a Rule 10b–5 claim under federal securities law to withstand a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. The Court then referred the matter to the London Court of International Arbitration ("LCIA") in accordance

with the terms of the arbitration provision in the parties' Shareholder Agreement.[1]

The remaining sole cause of action before the arbitrators is Plaintiff's 10b–5 claim, a pure statutory claim arising under U.S. federal securities law. In its Emergency Motion for Preliminary Injunction, Plaintiff claims that the Defendants[2] have argued illegally to the arbitrators that English law applies to all questions in this matter, and that the arbitrators need not consider the 10b–5 claim because English law does not recognize such claim:

> In their written opening statement, defendants have argued to the arbitrators that English law applies to *all* questions, and that the arbitrators should not even arbitrate the federal securities claim which this Court ordered arbitrated. The federal securities laws, according to defendants' latest theory, are irrelevant:
>
>> Although the Claimant [MEL] alleges breaches of U.S. federal securities laws in its claims submissions against GL, no evidence has been provided in the expert evidence as to why such laws are applicable to the facts alleged against GL. GL repeats its submissions in Part I of this statement that English law should be regarded as the law applied both to the contractual and non-contractual claims brought against it.
>
> (Written Opening Statement of Respondent [ ], p. 43).
>
> ... in defendants' opening statement ... they take the position that the substantive protections of the federal securities laws simply do not exist under English common law. Without those protections, defendants argue, MEL has no claim. In

other words, defendants argue that while MEL may have a claim under 10b–5, the arbitrators need not bother with it. Rather, they should merely apply English common law to quickly reach the conclusion that MEL has no remedy.

Plaintiff MEL's Memorandum of Law in Support of Its Emergency Motion for Preliminary Injunction at 5. Defendants' arguments before the arbitrators, Plaintiff submits, are an attempt to rob this Court of jurisdiction and to rob Plaintiff of a cause of action which this Court has previously recognized.

Plaintiff also argues that it has not waived its substantive rights to its 10b–5 claim by agreeing to arbitrate before the London tribunal. It relies on *Mitsubishi Motors Corp. v. Soler Chrysler Plymouth, Inc.*, 473 U.S. 614, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985), wherein the Supreme Court of the United States of America stated that "[b]y agreeing to arbitrate a statutory claim, a party does not forego the substantive rights afforded by statute; it only submits their resolution in an arbitration, rather than a judicial, forum." *Id.* at 3354.

Plaintiff further asserts that this Court has the power to enjoin the Defendants from advancing their position before the London tribunal. It urges the Court to grant a preliminary injunction to preserve status quo, that is, to force the Defendants to comply with this Court's July 17, 1990 Order and proceed to arbitration of the 10b–5 claim. The issuance of the injunction is appropriate here, Plaintiff argues, because (1) it is likely to succeed on the argument that it has the right to assert a 10b–5 claim, since this Court has already so determined; (2) it would suf-

---

1. The "Governing Law and Arbitration" portion of the Shareholder Agreement provides:

    13.1 This Agreement shall be governed by and construed in accordance with *English* law. 13.2 Any dispute arising out of or in connection with this Agreement, including any document referred to in or attached as a Schedule to it and including any question regarding its existence, validity or termination shall be referred to and finally resolved by arbitration under the Rules of the London Court of International Arbitration, which Rules are deemed to be incorporated by reference into this clause.

Shareholders Agreement at 34 (emphasis added).

2. Plaintiff has named three defendants in the case before this Court but only one defendant, Gotaas–Larsen, Inc., is a party to the arbitration proceeding now before the LCIA. Thus, while Plaintiff's instant motion refers to positions taken and arguments made by the "Defendants" in the arbitration proceeding, only Gotaas–Larsen, Inc. is a defendant party thereto. That only one defendant has submitted to arbitration is not, and has not been raised as, an issue in this Court.

fer irreparable harm in that it may have to return to arbitration to litigate the claim or be forever precluded from pursuing such claim; (3) the balance of equities tips heavily in its favor; and (4) the public interest will not be disserved by granting the injunction. *See Canal Authority v. Callaway*, 489 F.2d 567, 572 (5th Cir.1974); *In re Martin–Trigona*, 737 F.2d 1254, 1262 (2d Cir.1984).

Defendants argue that there is "absolutely no merit to MEL's motion" and specifically, that Plaintiff has failed to show that it will likely suffer irreparable injury in the event the Court denies a preliminary injunction. Defendant Gotaas–Larsen's Response to Plaintiff's Emergency Motion for Preliminary Injunction at 14 ("Defendants' Response Brief"). This Court finds that at this point, it cannot be said that Plaintiff has been or will be definitively harmed or injured in the absence of a preliminary injunction. At some point in the future, it may be determined otherwise. However, at this stage, no irreparable harm or injury has yet been shown as against the Plaintiff by the Defendants.

Defendants also submit that contrary to Plaintiff's representation, Defendants' position (which has been stated many times to the London tribunal) is that the London tribunal *should* resolve the 10b–5 claim on the merits. They deny ever having suggested that Plaintiff has "waived" its 10b–5 claim by submitting to arbitration in London.

According to the Defendants, Plaintiff's counsel raised the choice of law issue at the outset of the arbitration proceeding. Plaintiff's counsel apparently took the position that if the tribunal decided the choice of law question in favor of the Defendants (i.e., by finding that English law applied), then Plaintiff would not want the tribunal to continue and determine the merits of the 10b–5 claim, on the basis that U.S. securities laws might be deemed applicable. Plaintiff's counsel

also suggested that it may return to this Court for directions and request the stay be lifted.

It is the Defendants' position that the 10b–5 claim "should *not* be decided with reference to the federal securities acts." Defendants' Response Brief at 17. Interestingly, however, in response to an inquiry by the English solicitor on Plaintiff's behalf, the English solicitor on the Defendants' behalf stated in a letter that "our clients ... are content for the Tribunal to determine the merits of the 10b–5 Claim applying U.S. Federal Law in addition to dealing with the question of the applicability of Rule 10b–5 ..." *Id.* at 4.

*Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985), provides some insight into the issue raised herein. After holding that antitrust claims under American law were arbitrable by a Japanese tribunal pursuant to the parties' contract, the United States Supreme Court stated the following:

> To be sure, the international arbitral tribunal owes no prior allegiance to the legal norms of particular states; hence, it has no direct obligation to vindicate their statutory dictates. The tribunal, however, is bound to effectuate the intentions of the parties. Where the parties have agreed that the arbitral body is to decide a defined set of claims which includes, as in these cases, those arising from the application of American antitrust law, the tribunal therefore should be bound to decide that dispute in accord with the national law giving rise to the claim.

*Mitsubishi*, 473 U.S. at 636, 105 S.Ct. at 3359. It is clear that Plaintiff's 10b–5 claim arises solely from the application of American securities law. In such circumstances, the foreign "tribunal should be bound to decide that dispute in accord with the national law giving rise to the claim." [3] *Mitsubi-*

---

**3.** While the Supreme Court has stated that the foreign tribunal "should" be bound to decide a dispute under the national law giving rise to the claim, it did not state that the tribunal "must" do so. Research found no authority whereby a federal district court may compel a foreign tribunal to decide a statutory claim under United States statutory law.

Nonetheless, it should be noted that the application of national law by a foreign tribunal permits the litigant to effectively vindicate its statutory cause of action in the arbitral forum, and encourages American courts to cede jurisdiction of a claim arising under domestic law to a foreign tribunal in complex international commercial disputes where the parties have agreed to a

*shi,* 473 U.S. at 636, 105 S.Ct. at 3359. Paraphrasing the Supreme Court, international arbitrators frequently are selected from the legal as well as the business community and are capable of properly handling potentially complex statutory matters under federal law. *Mitsubishi,* 473 U.S. at 632, 105 S.Ct. at 3357.

While *Mitsubishi* did not reach the issue of a foreign tribunal's failure to apply American law to statutory claims, the Supreme Court did express its views on the matter:

... Nor need we consider now the effect of an arbitral tribunal's failure to take cognizance of the statutory cause of action on the claimant's capacity to reinitiate suit in federal court. We merely note that in the event the choice-of-forum clauses operated in tandem as a prospective waiver of a party's right to pursue statutory remedies for antitrust violations, we would have little hesitation in condemning the agreement as against public policy.

*Mitsubishi,* 473 U.S. at 636, n. 19, 105 S.Ct. at 3359, n. 19.

In addition, that a matter has been referred to international arbitration does not completely strip the American courts of jurisdiction over it.

Having permitted the arbitration to go forward the national courts of the United States will have the opportunity at the award-enforcement stage to ensure that the legitimate interest in the enforcement of the antitrust laws has been addressed.

*Mitsubishi,* 473 U.S. at 636, 105 S.Ct. at 3359. The Supreme Court continued as follows:

While the efficacy of the arbitral process requires that substantive review at the award-enforcement stage remain minimal, it would not require intrusive inquiry *to ascertain that the tribunal took cognizance of the antitrust claims and actually decided them.*

foreign arbitral forum. *Mitsubishi,* 473 U.S. at 636–38, 105 S.Ct. at 3359–60.

4. It is likely that the London tribunal will reach a decision in November of 1993 at the earliest, since the final statements of the parties are not due to be served until late October, followed

*Mitsubishi,* 473 U.S. at 638, 105 S.Ct. at 3360 (emphasis added). As applied to the instant case, the United States court could review the arbitration award to ascertain whether the London tribunal recognized the 10b–5 claim and actually decided it. If it did not, the court could refuse to confirm that portion of the award, and the Plaintiff may be able to "reinitiate suit in federal court" on the 10b–5 claim, *Mitsubishi,* 473 U.S. at 636, n. 19, 105 S.Ct. at 3359, n. 19, presumably under *Mitsubishi, id.,* and/or *Canal Authority, supra,* and/or such other federal case or cases that may be pertinent thereto.

For the reasons hereinabove stated, Plaintiff's Emergency Motion for Preliminary Injunction is hereby DENIED without prejudice to reassert same if future circumstances and facts warrant application of *Canal Authority v. Callaway,* 489 F.2d 567, 572 (5th Cir.1974), and/or *Mitsubishi, supra,* and/or such other federal case or cases that may be pertinent thereto.[4]

DONE AND ORDERED.

sometime thereafter by a half day of final questions by the tribunal. This Court remains available and amenable to any request the tribunal may address to it which, in any way, could assist the tribunal in this matter.